[No. 6708.   Decided August 5, 1907.]

WILLIAM L. O'CONNELL, *Respondent*, v. CHARLES E. MARVIN
                *et al., Appellants.*[1]

BILLS AND NOTES — LIABILITY ON INDORSEMENT — PRINCIPAL AND
AGENTS—BROKERS—FOR WHOM ACTING.   Where the owner of lands
agreed with C. with respect to a net price at which C. might sell the
property, brokers employed by C. to effect a sale are not agents of the
owner, where it appears that they found a prospective purchaser and
took from him a draft and indorsed the same over to the owner,
without limitation, as a first payment demanded by the owner, which
was to be forfeited in case the other payments were not made; hence
the brokers are liable to the owner on their indorsement upon dis-
honor of the purchaser's draft.

Appeal from a judgment of the superior court for King
county, Tallman J., entered November 24, 1906, upon find-
ings in favor of the plaintiff, after a trial on the merits be-
fore the court without a jury, in an action upon a bank draft.
Affirmed.

*McBride, Stratton & Dalton,* for appellants.

*Samuel Morrison,* for respondent.

PER CURIAM.—This is an action upon a bank draft.   The
draft in question was taken by the appellants in part payment
of the purchase price of certain real property owned by the re-
spondent and which the appellants, who are real estate agents,
held for sale.   It appears from the record that in 1904 the
property was owned by one Cummings.   Cummings at that
time was in need of money, and the respondent purchased the
property of him at an agreed price for his accommodation,
and at the same time gave Cummings the privilege of re-
selling it at a net price to the respondent of a fixed sum, agree-
ing to give him all that he could obtain for the property over
and above the sum so fixed.   Cummings listed the property
with the appellants.   In October, 1905, the appellants found

[1]Reported in 91 Pac. 254.

a prospective purchaser in one A. J. Palmour, and received, as earnest of the prospective sale, his draft on Molson's bank, of Port Arthur, Ontario, for $100, and his draft on A. V. Palmour, of the same place for $400, the latter draft being the draft in suit. Cummings was notified of the prospective sale, by the appellants, and he in turn approached the respondent and asked him to enter into a written contract agreeing to sell the property on payment of the purchase price on or before November 1, 1905, tendering him at the same time the appellant's check for $100. The respondent told Cummings that he was willing to sell on the terms proposed, but did not want to tie up the property until November 1 for such a small sum, and unless a larger sum as earnest money could be paid, he would not sign the contract. Cummings thereupon told him to call at the appellant's offices the next morning when he thought the matter could be arranged. The respondent did call as requested, and after some negotiation, the appellants agreed to endorse and turn over to him the $400 draft. The contract was thereupon signed and the draft delivered to the respondent. The respondent presented the draft to his banker, when it was discovered that it had not been indorsed by the appellants. He returned with it shortly thereafter to them, received their indorsement, and had it forwarded for collection. The drawee failed to honor the draft, and it was returned to the respondent, who thereupon called upon the appellants to make good their indorsement, and on their refusing to do so, instituted this action. The contract of sale above mentioned was as follows:

"Seattle, Wash., Oct. 3rd, '05.

"Received from Chas. E. Marvin & Sons Co., for account of a client Four Hundred Dollars, as surety deposit payment made by them on the purchase made by their client of seventeen (17) acres of land near the mouth of the Duwamish River and known as the E. M. Tatterson tract and particularly described as follows:

"Beginning at a point on the west line thereof, distant 21.38 rods south of the north line thereof; thence east 125.46

rods more or less to a point distant 24.54 rods from the east line of said southwest quarter; thence south 14 deg. 22′ east 17.60 rods; thence south 39 deg. east 5.39 rods to a point distant 16.75 rods west from the east line of said southwest quarter; thence west 133.25 rods more or less to the west line of said southwest quarter; thence north along said west line 21.37 rods to the place of beginning.

"The purchase price of this property is thirty-seven hundred ($3700) dollars to me with a condition that any margin which you secure in selling this property above thirty-seven hundred dollars shall be the total brokerage allowed you for selling the property.

"Payments: Four Hundred ($400) Dft. the receipt of which is hereinabove acknowledged and thirty-three hundred dollars ($3300) payable on or before November 1st, 1905. The object of the extension being to enable you to have the time till November 1st, 1905, to fully close up the deal if necessary. If not closed by this time the Four Hundred ($400) shall be forfeited, with the condition if the title is not satisfactory and complete to your attorney I will return the Four Hundred Dollars ($400) received this day. Deed to be made as ordered.     W. L. O'Connell.

"Witness: M. J. Cummings."

The appellants contend that they are not liable on their indorsement for the reason that they were the respondent's agents, authorized by him to sell the property, and that when they did sell it and took the draft from the purchaser they took it as the respondent's property, and their indorsement was nothing more than a means of transferring the legal title to the respondent, being necessary because the draft was payable to them; and they cite cases maintaining the rule that an agent who takes negotiable paper in his own name and indorses the same to his principal is not liable thereon, unless it is expressly agreed or intended that he shall assume a personal liability.

But we think this rule has no application here. The appellants were in no sense the agents of the respondent. They were not empowered to make contracts for him or in his name, nor did they bear to him any fiduciary relation whatever. On

the contrary, they dealt with him at arm's length, and owed him only that duty that every man owes to another with whom he contracts, namely, to deal honestly, and not overreach his co-contractor by fraud or deceit. The appellants' act, therefore, in indorsing the check, was not the act of the respondent. Did they indorse it then for the purpose of obligating themselves upon it? We think there can be no dispute upon this question. The indorsement was without limitation of any kind; and the draft was delivered as a payment to the respondent under a contract entered into between him and the appellants, to be returned by him only on condition that the title he had to the land, when called upon to make a deed, was not satisfactory to the appellants' attorney. There was no forfeiture under this condition. The draft, therefore, became the absolute property of the respondent, and he had the right to enforce it against the indorsers as well as against the drawer.

The judgment is affirmed.